**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 15, 2012

No. 11-31127

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

VIDAL WILSON,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5-11-CR-38-1

Before DeMOSS, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Vidal Wilson pled guilty to conspiracy to transport stolen vehicles in interstate commerce and to alter and remove vehicle identification numbers in violation of 18 U.S.C. §§ 371, 511, 2312.  On appeal, Wilson argues the district court's factual findings that supported three sentence enhancements were clearly erroneous.  We disagree and AFFIRM.

The factual basis for the plea established that Wilson and others stole vehicles in both Louisiana and Texas.  They took several of the vehicles to co-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-31127

defendant Bobby Tousant, who would alter the vehicle identification numbers so that the vehicles could be sold. Co-defendants Tousant and Malcolm Wilson, who was Vidal Wilson's nephew, also pled guilty to the conspiracy charge.

The Presentence Investigation Report ("PSR") identified other participants and at least 11 stolen vehicles that could be attributed to Vidal Wilson between 2007 and 2009. Wilson objected to the PSR findings that he (1) was involved in an organized scheme, (2) was an organizer or leader of a criminal activity that involved five or more participants, and (3) used a minor to commit the offense.

At the sentencing hearing, a Louisiana state trooper who investigated Wilson's activity testified that Melvin Brooks partly facilitated the vehicle identification-number alterations by obtaining what the witness called a "salvage title" and "salvage VIN" that belonged to another vehicle. The trooper further testified that Wilson's other nephew Christopher Boon, who was under age 18 at the time, admitted to stealing a vehicle with Wilson. The trooper stated that, on at least one prior occasion, Wilson located a vehicle in Texas to steal, drove back to Louisiana to pick up Malcolm and Boon, and then drove them back to Texas to steal the vehicle.

Finally, the trooper testified that Wilson and his nephews lived together, people temporarily brought stolen vehicles or parts to Wilson's yard, and Wilson was seen as the patriarch of the family who taught his nephews how to steal a vehicle and break it down. Dissension over Wilson's refusal to pay his nephew the proceeds from a theft caused his nephews to break away from Wilson. Wilson, though, claimed he stole vehicles only occasionally for extra income, never taught his nephews how to steal, and had no authority over other people. Wilson admitted that Boon knew how to steal a vehicle.

No. 11-31127

The district court acknowledged this organization was "loose" but found it had "sufficient minimal structure" such that a faction could break away from Wilson. The organization's scheme amounted to other people knowing how to steal vehicles, and when they did steal vehicles, Wilson knew what to do. The court further found Wilson was the "central figure" who provided advice and consultation. Lastly, the court found there was "sufficient evidence to place [Boon] beyond merely attending" the theft in Texas, determining Wilson brought Boon along to help steal the vehicle if necessary.

The district court adopted the factual findings in the PSR. Wilson's base offense level was increased by two levels because the offense involved an organized scheme, four levels because Wilson was an organizer or leader of a criminal activity that involved five or more participants, and two levels because Wilson used a minor to commit the offense. The court sentenced Wilson to 60 months in prison and a three-year term of supervised release. Wilson appeals.

DISCUSSION

The Government bears the burden of proving enhancement factors by a preponderance of the evidence. *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007). The district court must have an "acceptable evidentiary basis" for its findings of fact. *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995). "[A] presentencing report generally bears sufficient indicia of reliability . . . ." *Trujillo*, 502 F.3d at 357. A defendant may object to the report's findings, but "[t]he defendant bears the burden of showing that the information in the PSR relied on by the district court is materially untrue." *Id.*

"We review the district court's interpretation or application of the Sentencing Guidelines *de novo* and its factual findings for clear error. A factual

3

finding is not clearly erroneous if it is plausible in light of the record as a whole." *Id.* (citation omitted).

### A. Organized Scheme

The district court found Wilson's offense involved an organized scheme to steal or receive stolen vehicles or parts and increased his sentence by two levels. The relevant Guideline states: "If the offense involved an organized scheme to steal or to receive stolen . . . vehicles or vehicle parts . . . , increase by 2 levels." U.S.S.G. § 2B1.1(b)(12)(A) (2010).[1] The organized scheme must be a "case of an ongoing, sophisticated operation (*e.g.*, an auto theft ring or 'chop shop')." § 2B1.1 cmt. n.10.

When the Guidelines' language is unambiguous, its plain meaning controls. *United States v. Diaz-Gomez*, 680 F.3d 477, 480 (5th Cir. 2012). Its commentary, when consistent, receives controlling weight. *United States v. Velasco*, 465 F.3d 633, 637 (5th Cir. 2006). Wilson argues his activities involved no planning, structure, profit-sharing, hierarchy, or meetings. The Guidelines do not demand such elements before there is an "organized scheme." There must be some sophistication, but criminal enterprises need not adopt best practices of legitimate businesses in order to meet that standard. Indeed, criminal sophistication might entail a certain informality to avoid detection.

The charged conspiracy here progressed over 17 months and involved re-identifying stolen vehicles with salvaged identification numbers and titles. Testimony at the sentencing hearing suggested Wilson sold stolen vehicles to Tousant on multiple occasions, used others to help Wilson steal and transport

---

[1] The organized scheme enhancement is currently located at U.S.S.G. § 2B1.1(b)(13) (2012).

No. 11-31127

the vehicles across state lines, received a larger share of the profits than at least one co-conspirator, and influenced his family's involvement. It would be fair to characterize the conspiracy as loosely organized, but it is organized nonetheless. We cannot say the district erred in its finding.

*B. Organizer or Leader of at Least Five Participants*

If a "defendant was an organizer or leader of a criminal activity that involves five or more participants or was otherwise extensive," there is an "increase by 4 levels" to the base offense. U.S.S.G. § 3B1.1(a) (2010).[2] The district court applied this provision to Wilson's conduct.

As an initial point, the district court did not clearly err in finding this activity involved at least five participants. The Guidelines' commentary defines a "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." § 3B1.1 cmt. n.1. The Guidelines encompass participants in the "contours of the underlying scheme itself." *United States v. Wilder*, 15 F.3d 1292, 1299 (5th Cir. 1994). A defendant counts as one participant. *Id.* Tousant and Malcolm count as two more. It is plausible for the district court also to have found Brooks, who provided salvaged identification numbers and titles, and Boon, who admitted to stealing a vehicle with Wilson, were two more participants.

As to Wilson's classification as an organizer or leader, an application note to the Guidelines provides seven factors a court should consider in distinguishing an organizer or leader from a manager or supervisor:

---

[2] The Guidelines state in part: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." § 3B1.1(a).

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

§ 3B1.1 cmt. n.4.

Testimony suggested Wilson assumed a leadership and influential role in his family. The district court found Wilson originated this theft ring and taught others how to steal vehicles. The court found Wilson participated in every phase of the scheme, including training, stealing, fencing, and buying. Further, Wilson located a vehicle in Texas, recruited accomplices to help him steal it, and effectively took a larger share of that vehicle's proceeds.

Wilson must have organized or led at least one other participant. *United States v. Okoli*, 20 F.3d 615, 616 (5th Cir. 1994). The district court found Wilson was a leader over his nephews because of Wilson's age, influence, shared skills in vehicular theft, and the nephews' eventual break from Wilson. Testimony at the sentencing hearing supports Wilson's status as an organizer because of his initiatives in the Texas theft.

There was not clear error when the district court found that Wilson was the "most central figure" and that others came to him to sell stolen parts and connect to other people.

*C. Use of a Minor*

The district court found Wilson used or attempted to use his minor nephew Christopher Boon to steal a vehicle and increased his sentence by two levels. The court relied on a Guideline that states: "If the defendant used or attempted to use a person less than eighteen years of age to commit the offense

No. 11-31127

or assist in avoiding detection of, or apprehension for, the offense, increase by 2 levels." U.S.S.G. § 3B1.4 (2010).

Wilson argues that, at most, Boon was present during one of the thefts. A minor's mere presence during the commission of an offense is insufficient for the use-of-a-minor adjustment to apply. *United States v. Molina*, 469 F.3d 408, 415 (5th Cir. 2006). Here, the district court found there was "sufficient evidence to place [Boon] beyond merely attending" the Texas theft, finding Wilson's purpose in bringing Boon, "an accomplished car thief," was to help steal the vehicle if they ran into problems. The district court's finding is not clearly erroneous.

AFFIRMED.